UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JAMES D.,[1]

      Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

23-CV-1056-LJV
DECISION & ORDER

---

On October 5, 2023, the plaintiff, James D. ("James"), brought this action under

the Social Security Act ("the Act").  Docket Item 1.  He seeks review of the

determination by the Commissioner of Social Security ("Commissioner") that he was not

disabled.[2]  *Id.*  On January 3, 2024, James moved for judgment on the pleadings,

Docket Item 4; on January 30, 2024, the Commissioner responded and cross-moved for

judgment on the pleadings, Docket Item 6; and on February 13, 2024, James replied,

Docket Item 7.

---

[1] To protect the privacy interests of Social Security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial.  Standing Order, Identification of Non-Government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] James applied for both Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").  One category of persons eligible for DIB includes any adult with a disability who, based on his quarters of qualifying work, meets the Act's insured-status requirements.  *See* 42 U.S.C. § 423(c); *Arnone v. Bowen*, 882 F.2d 34, 37-38 (2d Cir. 1989).  SSI, on the other hand, is paid to a person with a disability who also demonstrates financial need.  42 U.S.C. § 1382(a).  A qualified individual may receive both DIB and SSI, and the Social Security Administration uses the same five-step evaluation process to determine eligibility for both programs.  *See* 20 C.F.R. §§ 404.1520(a)(4) (concerning DIB), 416.920(a)(4) (concerning SSI).

For the reasons that follow, this Court grants James's motion in part and denies the Commissioner's cross motion.[3]

## **STANDARD OF REVIEW**

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).  The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*.  This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citation modified) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)).  Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).

"Substantial evidence" means "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  "The substantial evidence standard means once an ALJ finds facts, [the court] can reject those facts only if a reasonable fact finder would *have to conclude otherwise*." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (citation modified) (emphasis in original); *see McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to more than one rational

---

[3] This Court assumes familiarity with the underlying facts, the procedural history, and the decision of the Administrative Law Judge ("ALJ") and refers only to the facts necessary to explain its decision.

interpretation, the Commissioner's conclusion must be upheld.").  But "[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."  *Johnson*, 817 F.2d at 986.

## DISCUSSION

### I.    THE ALJ'S DECISION

On October 31, 2022, the ALJ found that James had not been under a disability from April 1, 2020, through the date of the decision.  *See* Docket Item 3 at 35–36.  The ALJ's decision was based on the five-step sequential evaluation process under 20 C.F.R. §§ 404.1520(a) and 416.920(a).  *See id.* at 23–25.

At step one, the ALJ found that James had not engaged in substantial gainful activity since April 1, 2020, his alleged onset date.  *Id.* at 25.  At step two, the ALJ found that James suffered from one severe, medically determinable impairment: obesity.  *Id.*

At step three, the ALJ found that James's severe, medically determinable impairment did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id.* at 30.  More specifically, the ALJ found that James's physical impairment did not meet or medically equal listing 1.15 (disorders of the skeletal spine resulting in compromise of a nerve root).  *See id.*  In assessing James's mental impairments, the ALJ found that James was not limited in interacting with others and only mildly limited in understanding, remembering, or applying

3

information; concentrating, persisting, or maintaining pace; and adapting or managing himself.  *Id.* at 29–30.

The ALJ then found that James had the residual functional capacity ("RFC")[4] to "perform light work as defined in 20 C[.]F[.]R[. §§] 404.1567(b) and 416.967(b)" except that:

> [James] can perform occasional stooping, crouching, crawling, kneeling, and climbing ramps and stairs. [He] cannot climb ladders, ropes[,] or scaffolds.  [He] cannot balance as defined in the DOT/SCO.  [He] cannot tolerate exposure to hazards, such as dangerous moving machinery and unprotected heights.  [He] can tolerate occasional exposure to concentrated[] extreme heat and extreme cold.

*Id.* at 30.

At step four, the ALJ found that James could no longer perform any past relevant work.  *Id.* at 34.  But given James's age, education, and RFC, the ALJ found at step five that James could perform substantial gainful activity as a cleaner, routing clerk, or cafeteria attendant.  *Id.* at 35; *see Dictionary of Occupational Titles* 323.687-014, 1991 WL 672783 (Jan. 1, 2016); *id.* at 222.687-022, 1991 WL 672133 (Jan. 1, 2016); *id.* at 311.677-010, 1991 WL 672694 (Jan. 1, 2016).  The ALJ therefore found that James had not been under a disability since his alleged onset date.  *See* Docket Item 3 at 35; *see also id.* at 25.

---

[4] A claimant's RFC is the most "an individual can still do despite his or her limitations . . . in an ordinary work setting on a regular and continuing basis."  SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996).  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."  *Id.*; *see Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999).

## II.    ALLEGATIONS

James raises one argument: that the ALJ erred in assessing the severity of his mental impairments.  *See* Docket Item 4-1 at 10–17.  More specifically, James argues that the ALJ erred by finding his mental impairments to be non-severe, improperly applying the special technique, and failing to consider any mental limitations in the RFC. *See id.* at 10–11.  This Court agrees that the ALJ erred and, because that error was to James's prejudice, remands the matter to the Commissioner.

## III.    ANALYSIS

At step two, the regulations require that an ALJ apply the "special technique" to determine whether a claimant's medically determinable impairments are severe.  *See* 20 C.F.R. § 404.1520(a).  The ALJ did that here, finding that James was not limited in interacting with others and only mildly limited in understanding, remembering, or applying information; concentrating, persisting, or maintaining pace; and adapting or managing himself.  *See* Docket Item 3 at 29–30.  And the ALJ concluded that, "[b]ecause [James's] medically determinable mental impairments cause no more than 'mild' limitation[s] in any of the functional areas . . ., they are non[-]severe."  *Id.* at 30.

But as the ALJ acknowledged, that determination was "not a[n] [RFC] assessment" like the one step four requires.  *Id.*; *see Jatava L. v. Comm'r of Soc. Sec.*, 2021 WL 4452265, at *5 (W.D.N.Y. Sep. 28, 2021) ("[T]he Social Security Regulations stress that the 'special technique' described in 20 C.F.R. [§] 404.1520(a) is not an RFC assessment, and further, the mental RFC assessment . . . 'requires a more detai[l]ed assessment.'" (quoting SSR 96-8p, 1996 WL 374184, at *4)).  At step four, an ALJ must "weigh all of the evidence available to make an RFC finding that [is] consistent with the

5

record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013); *accord Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022). In other words, whereas the analysis at step two labels impairments as severe or non-severe, the analysis at step four determines what a claimant can and cannot do in light of those impairments.

Because the step-two and step-four analyses differ, *see David Q. v. Comm'r of Soc. Sec.*, 2022 WL 806628, at *5 (W.D.N.Y. Mar. 17, 2022) ("[I]t is well-established that the step-two analysis is analytically distinct from the RFC analysis." (citation modified)), an ALJ must address all limitations—severe and non-severe—to determine a claimant's RFC, *see Parker-Grose v. Astrue*, 462 F. App'x 16, 18 (2d Cir. 2012) ("A[n] RFC determination must account for limitations imposed by both severe and non[-]severe impairments."); *Felix S. v. Comm'r of Soc. Sec.*, 630 F. Supp. 3d 423, 428 (W.D.N.Y. 2022) ("Simply because the ALJ concluded that [the p]laintiff's mental limitations were non-severe impairments does not relieve him of the duty to consider them in connection with assessing the RFC."); *David Q.*, 2022 WL 806628, at *5 ("[T]he ALJ's discussion of evidence and functional limitations relating to [the] plaintiff's depression at step two did not relieve him of the obligation to further assess [the] plaintiff's mental health impairment in the RFC portion of his decision."). But the ALJ did not do that here. Indeed, other than mentioning what James reported as mental issues, the ALJ said nothing at all about those issues at step four. And that error requires remand. *Valerie L. v. Comm'r of Soc. Sec.*, 2022 WL 409575, at *3 (W.D.N.Y. Feb. 10, 2022) ("[A]t step two[,] the ALJ acknowledged that Valerie had non-severe mental limitations, but she did not incorporate those limitations into the RFC, nor did she explain why it was not necessary to incorporate them. Because the ALJ must consider

6

all limitations—severe and non-severe—in the RFC analysis at step four, that was error requiring remand.").

At step four, the ALJ noted that James reported "issues being around people, due to his anxiety and depression." Docket Item 3 at 31. The ALJ also noted that James "experience[ed] anxiety from the time he wakes up, with associated shortness of breath, racing heart, sweating, chest pain, and stomach aches," and that "such anxiety attacks occur daily and last several hours." *Id.* But the ALJ's consideration of James's mental impairments stopped with those observations. The ALJ did not consider the medical opinions, examination results, or treatment notes related to those impairments, nor did she address whether those impairments might affect James's ability to work in any way. *See id.* at 30–34.

The fact that the ALJ addressed those impairments at step two and explained why she found them to be non-severe does not excuse the failure to address them at step four. Indeed, the ALJ explicitly acknowledged at step two that "[t]he mental [RFC] assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment" of those impairments. *Id.* at 30. But the ALJ never performed that "more detailed assessment," and that was error. *See Sharon J. v. Comm'r of Soc. Sec.*, 716 F. Supp. 3d 59, 65 (W.D.N.Y. 2024) ("The ALJ's failure to include any discussion of [the p]laintiff's non-severe mental limitations in the RFC is error.").

The Commissioner argues that an ALJ is "not required to include restrictions in the RFC to account for non-severe mental impairments or mild functional limitations." Docket Item 6-1 at 15–17. And the Commissioner is correct. When an ALJ finds that a claimant's impairments are non-severe or will have only a mild impact on a claimant's

ability to function, the ALJ need not include restrictions addressing them in the RFC. *See, e.g.*, *Grace M. v. Comm'r of Soc. Sec.*, 2022 WL 912946, at *3 (W.D.N.Y. Mar. 29, 2022) ("Even though mild limitations may cause functional restrictions, such limitations do not compel the inclusion of mental limitations in the RFC."). But that does not mean that an ALJ is free to ignore those impairments when formulating the RFC. *See Parker-Grose*, 462 F. App'x at 18. On the contrary, as the ALJ herself acknowledged, *see* Docket Item 3 at 30, it was incumbent on her at least to consider them. And in failing to do so here, the ALJ erred. *See Sharon J.*, 716 F. Supp. 3d at 65 ("Here, the written determination does not even mention, let alone contain any discussion of, [the p]laintiff's mental impairments in connection with the RFC assessment. . . . The Court is therefore left to speculate regarding why the RFC does not include any mental limitations, and by extension whether the RFC is supported by substantial evidence.").

In sum, the ALJ erred by failing to address James's non-severe mental impairments when formulating the RFC. For that reason, the ALJ's decision was not supported by substantial evidence, and remand is required. *See Valerie L.*, 2022 WL 409575, at *3.[5]

---

[5] This Court "will not reach the remaining issues raised by [James] because they may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003); *see Beers v. Comm'r of Soc. Sec.*, 449 F. Supp. 3d 96, 103–04 (W.D.N.Y. 2020).

## **CONCLUSION**

The Commissioner's motion for judgment on the pleadings, Docket Item 6, is DENIED, and James's motion for judgment on the pleadings, Docket Item 4, is GRANTED in part and DENIED in part.  The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated:        March 26, 2026
              Buffalo, New York

                              */s/ Lawrence J. Vilardo*
                              LAWRENCE J. VILARDO
                              UNITED STATES DISTRICT JUDGE

9